UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:18-cv-24250-COOKE/GOODMAN

AARON TIMBERLAKE,
               Plaintiff,
vs.

CARNIVAL CORPORATION,
a foreign for profit corporation,

               Defendant.

_____/

## DEFENDANT, CARNIVAL CORPORATION'S EXPERT WITNESS DISCLOSURE

Defendant, Carnival Corporation, by and through its undersigned counsel and pursuant to Rule 26(a)(2)(B), Federal Rules of Civil Procedure, and this Court's Order Setting Civil Trial Date and Pretrial Deadlines, dated December 10, 2018 [D.E. 12], hereby discloses the following expert witness who is expected to testify at the trial of this matter (either live or by deposition testimony):[1]

> Dr. Barry Poplaw M.D.
> Founder and CEO
> All Sea Medical
> 4300 Alton Road
> Miami, FL 33140

In compliance with Rule 26(a)(2)(B), Defendant makes the following disclosures concerning Dr. Poplaw:

---

[1] Defendant has filed a motion to extend the deadline for its expert disclosure, however, the motion remains pending at this time. Plaintiff also just announced for the first time in his motion to extend deadlines, that he wishes to name an economic expert. Defendant reserves the right to amend this disclosure and to name additional experts based on the Court's rulings on the pending motions.

48607303;1

(i)     Dr. Poplaw is expected to offer testimony regarding the "Guidelines on the Medical Examinations of Seafarers" ("Guidelines") developed by The International Labour Office ("ILO") and the criteria for issuance of fitness for duty certificates consistent with the Guidelines.  Dr. Poplaw is also expected to offer testimony regarding Plaintiff's fitness for duty at sea consistent with the Guidelines.  Dr. Poplaw's report, including a statement of the opinions he will express and the basis and reasons for them is attached hereto as **Exhibit "A."[2]**

(ii)    Dr. Poplaw's opinions will be based on his knowledge of the Guidelines as well as his review of relevant medical records for Plaintiff, security records from the Freedom describing Plaintiff's psychotic episode at sea, and deposition testimony provided by Plaintiff, John M. Reynold, Ph.D., M.D., Juandalyn Peters, M.D., and Elliott B. Rosenbaum, Psy.D. ABPP.

(iii)   Dr. Poplaw will rely on certain exhibits, to include the Guidelines, along with "Table B-I/9: Assessment of minimum entry level and in-service physical abilities for seafarers" and Appendix E, titled "Fitness criteria for common medical conditions."

(iv)    Dr. Poplaw's curriculum vitae is attached hereto as **Exhibit "B."** Dr. Poplaw has not authored any publications in the last 10 years.

(v)     Dr. Poplaw has not testified as an expert witness at trial or by deposition in any case in the last 4 years.

---

[2] Plaintiff's expert still has not produced a "final" report.  Nor has he appeared for deposition.  Accordingly, Dr. Poplaw reserves the right to amend his report following a review of Plaintiff's expert's "final" report and deposition testimony.

(vi)    Dr. Poplaw's hourly rate is $500.00 per hour (capped at $3,500.00 per day).

Defendant reserves the right to call any and all additional expert witnesses in rebuttal and/or for impeachment purposes and reserves the right to amend and/or supplement this Expert Witness Disclosure.

Dated:  May 10, 2019                                 Respectfully submitted,

By: */s/ Melissa S. Zinkil*                    
     James S. Bramnick (Florida Bar No. 190994)
     Melissa S. Zinkil (Florida Bar No. 0653713)
     **AKERMAN LLP**
     Three Brickell City Centre, Suite 1100
     98 SE Seventh Street
     Miami, FL 33136
     Phone:  (305) 374-5600/Fax: (305) 374-5095
     Email:  james.bramnick@akerman.com
     Email:  melissa.zinkil@akerman.com
     Email:  vivian.lopez@akerman.com
     Email:michelle.reynolds@akerman.com
     *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document, is being served this day, May 10, 2019, on all counsel and parties of record identified on the below Service List, via electronic mail.

By: */s/ Melissa S. Zinkil*                    
     Melissa S. Zinkil (Florida Bar No. 0653713)

## SERVICE LIST

Anthony V. Falzon
ANTHONY V. FALZON P.A.
12000 Biscayne Boulevard, Suite 702
Miami, FL 33181
Phone: (786) 703-4181/Fax: (786) 703-2961
E-Mail: tony@anthonyfalzon-law.com
E-Mail: assistant@anthonyfalzon-law.com

*Counsel for Plaintiff*

EXHIBIT "A"

*AARON TIMBERLAKE V. CARNIVAL CRUISE LINE*
EEOC Charge No. 510-2015-04507

## DECLARATION OF BARRY POPLAW, M.D.

1.      My name is BARRY POPLAW, I am a licensed medical doctor and the principal of All

Sea Medical, a company which provides maritime occupational health solutions, including but not limited

to examinations of prospective seafarers for various cruise lines, including Carnival Cruise Line ("CCL"),

and the issuance of medical clearance certificates in accordance with the "Guidelines on The Medical

Examinations of Seafarers" published by the International Labor Office (the "Guidelines").

2.      I graduated medical school in 1999, completed my residency in emergency medicine at

Albert Einstein College of Medicine in New York in 2003, and became Board Certified in emergency

medicine by the American Board of Emergency Medicine shortly thereafter.  I am attending physician at

Mount Sinai Medical Center, a primary receiving hospital for maritime illnesses and injuries.  I have

experience working with occupational health programs, am Norwegian Maritime Authority ("NMA")

trained to conduct seafarer examinations, and have spent the last 15 years treating seafarers in the hospital

setting and assessing injured or ill seafarers fitness to return to duty.

3.      I have reviewed the medical records that Carnival Cruise Line ("CCL") has on file for

Aaron Timberlake ("Mr. Timberlake").  This declaration is provided based on my review of the records,

my experience as a licensed medical doctor, and my working knowledge of the Guidelines.  If called

upon, I am competent to testify to the matters set forth herein.

4.      Consistent with the Guidelines, before a prospective seafarer can be medically cleared for

service at sea, he or she must complete a seafare medical fitness examination ("SMFE") questionnaire,

undergo a physical exam, and in some cases consultation with a specialist.

5.      The purpose of the SMFE questionnaire is to highlight important and possibly dangerous

conditions which may not be apparent on physical examination and which could either impair a seafarer

during his or her duty on board a vessel or pose a threat to other seafarers or passengers.  Given the

logistics of living and working at sea, in confined spaces, for long hours, and disconnected/isolated from

1

family and friends, psychiatric conditions are of particular concern. The lack of accurate input on the SMFE questionnaire inhibits the possibility of triggering further assessment of such conditions in order to determine the individual's fitness for duty at sea.

6.      In the interest of safety and security, seafarers are required to undergo an examination and complete an SMFE questionnaire every two years, or in the interim when there is a significant change in the seafarer's medical status which calls into question his or her fitness for continued duty at sea.

7.      Based on the medical records I reviewed, it is my opinion, based upon a reasonable degree of medical certainty, that Mr. Timberlake suffered an acute event of "psychosis," as described in the 10th revision of the International Statistical Classification of Diseases and Related Health Problems, while on board the Carnival Freedom in May/June 2015.

8.      This appears to be the third such event Mr. Timberlake suffered since the age of 18. Indeed, records Carnival received post-incident reflect that Mr. Timberlake was hospitalized for psychiatric reasons at the age of 18 (an event which was not disclosed on either of the two SMFE questionnaires Mr. Timberlake completed for CCL) and again sought psychiatric care for insomnia and paranoid delusions on May 11, 2015, shortly before boarding the Carnival Freedom.   The available medical records do not specifically identify any "provoking factors" associated with these episodes.

9.      Consistent with the Guidelines, following a single episode of psychosis (diagnosis code F20-31) without provoking factors or more than one episode with or without provoking factors an individual is temporarily unfit for duty at sea – and therefore cannot be medically cleared to work as a seafarer - for a period of years following the last acute episode.   Where, as here, the individual has suffered multiple episodes and requires a medication regimen, in order to exclude the likelihood of recurrence for a seafarer performing duties at sea and beyond coastal waters, the Guidelines provide that the individual cannot be medically cleared until at least five (5) years have passed since the end of the last episode, and provided the individual has no residual symptoms and has required no medication during the most recent two years.   An excerpt from the Guidelines addressing these restrictions is attached hereto as Exhibit "1."

2

10.     Based on my review of the records and with reference to the Guidelines, it is my opinion, based on a reasonable degree of medical certainty, that Mr. Timberlake is and remains temporarily unfit for duty at sea at this time and will so remain until at least May/June 2020 (five years after the acute event that occurred on the Carnival Freedom).   Only then could Mr. Timberlake apply for clearance consistent with the Guidelines.   And, Mr. Timberlake could only be given medical clearance at that time, if he were to demonstrate that he has been symptom free for the past five years and that he did not require and did not take any medication for the condition for the most recent two years.   Clearance would also require that Mr. Timberlake undergo a specialty consultation with and get clearance from a psychiatrist.

I declare under penalty of perjury that the foregoing statements are true and correct.

Executed on: June 19, 2018

_____
Barry Poplaw, M.D.

3

# EXHIBIT "1"

| ICD-10 (diagnostic codes) | Condition (justification for criteria) | Incompatible with reliable performance of routine and emergency duties safely or effectively<br>– expected to be temporary (T)<br>– expected to be permanent (P) | Able to perform some but not all duties or to work in some but not all waters (R)<br>Increased frequency of surveillance needed (L) | Able to perform all duties worldwide within designated department |
|---|---|---|---|---|
| F20–31 | **Psychosis** (acute) -- whether organic, schizophrenic or other category listed in the ICD. Bipolar (manic depressive disorders) *Recurrence leading to changes to perception/cognition, accidents, erratic and unsafe behaviour* | *Following single episode with provoking factors:*<br>T – Until investigated and stabilized and conditions for fitness met. At least three months after episode | R, L – Time limited, restricted to near coastal waters and not to work as master in charge of vessel or without close supervision and continuing medical monitoring, provided that:<br>– seafarer has insight;<br>– is compliant with treatment; and<br>– has no adverse effects from medication | Case-by-case assessment at least one year after the episode, provided that provoking factors can and will always be avoided |
|  |  | *Following single episode without provoking factors or more than one episode with or without provoking factors:*<br>T – Until investigated and stabilized and conditions for fitness met. At least two years since last episode<br>P – More than three episodes or continuing likelihood of recurrence. Criteria for fitness with or without restrictions are not met | R, L – Time limited, restricted to near coastal waters and not to work as master in charge of vessel or without close supervision and continuing medical monitoring providing that:<br>– the seafarer has insight;<br>– is compliant with treatment; and<br>– has no impairing adverse effects from medication | Case-by-case assessment to exclude likelihood of recurrence at least five years since end of episode if no further episodes; no residual symptoms; and no medication needed during last two years |
| F32–38 | **Mood/affective disorders** Severe anxiety state, depression, or any other mental disorder likely to impair performance *Recurrence, reduced performance, especially in emergencies* | T – While acute, under investigation or if impairing symptoms or side effects of medication present. At least three months on stable medication<br>P – Persistent or recurrent impairing symptoms | R, L – Restrict to near coastal waters and not to work as master in charge of ship, only when seafarers have:<br>– good functional recovery;<br>– insight;<br>– is fully compliant with treatment, with no impairing side effects; and<br>– a low* likelihood of recurrence | Case-by-case assessment to exclude likelihood of recurrence after at least two years with no further episodes and with no medication or on medication with no impairing effects |
|  | **Mood/affective disorders** Minor or reactive symptoms of anxiety/depression *Recurrence, reduced performance, especially in emergencies* | T – Until symptom free. If on medication to be on a stable dose and free from impairing adverse effects<br>P – Persistent or recurrent impairing symptoms | R, L – Time limited and consider geographical restriction if on stable dose of medication and free from impairing symptoms or impairing side effects from medication | Case-by-case assessment after one year from end of episode if symptom free and off medication or on medication with no impairing effects |
| F00–99 Not listed separately | **Other disorders**, e.g. disorders of personality, attention (e.g. ADHD), development (e.g. autism) *Impairment of performance and reliability and impact on relationships* | P – If considered to have safety-critical consequences | R – As appropriate if capable of only limited duties | No anticipated adverse effects while at sea. No incidents during previous periods of sea service |

EXHIBIT "B"

# Barry Poplaw, MD

drpoplaw@allseamedical.com
305-992-1311
North Miami, FL 33181

**Education**:

| | |
|---|---|
| **Albert Einstein College of Medicine** | New York City, NY |
| *Residency in Emergency Medicine* | 2000-2003 |

| | |
|---|---|
| **Saint George's University School of Medicine** | True Blue Point, Grenada |
| *M.D.* | 1999 |

| | |
|---|---|
| **Concordia University** | Montreal, Canada |
| *B.S. in Biology* | May 1994 |

**Professional Experience:**

| | |
|---|---|
| **All Sea Medical** | Miami, FL |
| *CEO* | January 2017-Present |

- Founder, owner, and administrator
- Maritime Pre-employment Physical Network Development
- Management of a global health network of over 200 medical clinics spanning across 5 continents
- Maritime medical logistics director and specialist
- Case Management and repatriation logistics
- Only approved Miami, Florida Norwegian Maritime Authority Physician for Seafarers Medical exams

**Schumacher Clinical Partners (FKA Hospital Physician Partners)**

*Chief Section Medical Officer (Florida and Pennsylvania)*      November 2009-January 2018

- Provide Executive oversight and direction for the clinical operations of 11+ hospitals and their Emergency Departments
- Responsible for the overall performance of each Hospital and Emergency Department as measured by achieving key quality indicators
- Liaison with all levels of hospital administration, serving as the primary contact with c-suite on clinical and operational matters
- Interview, orient, train and mentor new Hospitals and Emergency Department Directors and clinical provides within the region
- Work in conjunction with Business Development on new business proposals, presentations and contract negotiations

- Created and implemented occupational health programs covering postal workers, fire and police departments
- Supervise clinical training with Mount Sinai Medical Center's Emergency Medicine residency program
- Interim Medical Director in over 5 hospitals while reestablishing their in-house hospital management system

**Mount Sinai Medical Center**                                         Miami Beach, FL
*Attending Senior Physician, Emergency Medicine*                       2005-Present

- Over 15 years of experience treating seafarers, both cruisers and employees, in the hospital setting and assessing injured or ill Seafarers fitness to return to duty.
  Mount Sinai Medical Center is the preferred hospital of the Port of Miami, it is the primary receiving hospital for maritime illnesses and injuries, as well as a Baker Act and Psych receiving facility for the state of Florida.

**Jackson North Medical Center**                                       North Miami Beach, FL
*Medical Director, Emergency Medicine*                                 2005-2009

**Palmetto General Medical Center**                                    Hialeah, FL
*Assistant Medical Director, Emergency Medicine*                       2003-2006

**Academic Appointments**:

**Nova Southeastern University, School of Medicine**                   October 2014-Present
                                                                       Davie, FL

**Florida International University, Herbert Wertheim College**         August 2014-Present
                                                                       Miami, FL

**Licensure and Certifications**:
**Active Medical Licenses**
- Florida
- DEA

**Certifications:**
- American Board of Emergency Medicine
- BLS
- ACLS
- ATLS
- PALS
- NIH Stroke Scale
- NMA (Norwegian Maritime Authority) Only Approved doctor in Miami, Florida
- Florida Baker Act and Marchman Act Certified

**Skills:**
Computer: Proficient in Microsoft Word, Excel, and PowerPoint
Languages : English, French, Intermediate Spanish